UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

GREGG N. BATTERSBY,

       Plaintiff,                          Case No. 2:07-cv-1240
                                            JUDGE GREGORY L. FROST
     v.                                         Magistrate Judge Norah McCann King

STATE OF OHIO, et al.,

       Defendants.

**OPINION AND ORDER**

This matter is before the Court for consideration of Defendants' Motion to Dismiss (Doc. # 11), Plaintiff's memorandum in opposition (Doc. # 14), and Defendants' reply memorandum (Doc. # 15). For the reasons that follow, this Court finds Defendants' motion well taken in regard to Plaintiff's federal claims, declines to exercise jurisdiction over Plaintiff's state law claims, and dismisses this action.

**I. Background**

Plaintiff, Gregg Battersby, is a chiropractor licensed in the State of Ohio. In his Complaint, Plaintiff asserts that Defendant the Ohio Bureau of Workers' Compensation ("BWC") conducted a January 2002 audit of his billing practices in regard to thirteen patients. The BWC concluded as a result of this audit that Plaintiff has been overpaid by $155,853.93. Subsequently, the BWC again investigated Plaintiff in 2004 and concluded that Plaintiff had been overpaid $64,883.27 in connection with a purported violation of Ohio Admin. Code § 4123-6-451 and $102,203.44 in connection with a purported violation of Ohio Admin. Code §

1

4123-7-12, for an asserted total of $172,818.44 that the BWC seeks repaid.[1]

Plaintiff also alleges in his complaint that in 2006, he pled no contest to a fourth degree misdemeanor–not identified in the Complaint–which resulted in a subsequent investigation by Defendant the Ohio State Chiropractic Board ("the Board").[2]  As a result of its investigation, the Board held a hearing that resulted in a March 21, 2007 order that suspended his license for 10 days.  The Board also required Plaintiff to undergo a psychological assessment and evaluation by the Center for Marital and Sexual Health.  The Board then allegedly informed numerous insurance carriers of the suspension, which Plaintiff asserts resulted in the companies terminating him from their provider networks.[3]

Based on the foregoing events, Plaintiff filed the instant action on December 10, 2007. In an eleven-count Complaint, he asserts federal claims under 42 U.S.C. § 1983 and 15 U.S.C. § 1, as well as state law claims for libel, fraud, breach of contract, breach of confidentiality, and intentional infliction of emotional distress against the following defendants: the State of Ohio;

---

[1] The Court recognizes that $64,883.27 and $102,203.44 do not equal $172,818.44, but these are the amounts set forth in the Complaint that the Court must regard as true for present purposes.  (Doc. # 2 ¶¶ 156, 160, 163.)  The pleading does not explain the variance in the total amount for which the BWC seeks repayment.

[2] Plaintiff pleads that the Board improperly released confidential information to a newspaper, the Cleveland Plain Dealer, which reported that Plaintiff had been " 'accused of requesting sexual favors.' " (Doc. # 2 ¶¶ 42-45.)  According to Plaintiff, the release of this information led the state court handling the charges not to dismiss the charges following his completion of a diversion program and resulted in his losing numerous patients, as well as his wife.

[3] In an attachment to their motion to dismiss, Defendants provide evidence that Plaintiff unsuccessfully appealed the Board's decision to the Franklin County Court of Common Pleas. (Doc. # 11-2.)  Because Plaintiff did not plead this fact, the Court can consider the appeal only in regard to the Federal Rule of Civil Procedure 12(b)(1) aspect of the motion to dismiss.  The Court notes that the state court decision provides details of Plaintiff's state law conviction.

the Board; the Board's Executive Director, Kelly Caudill; Board members Earl Wiley, Mark Korchok, Larry Price, Richard Maynard, Anna Jenkins, and Rex Waldenmyer; the BWC; BWC administrator Marsha Ryan; and unknown John Doe defendants. Plaintiff seeks compensatory damages of $50 million and punitive damages of $100 million. (Doc. # 2 ¶ 227.)

Defendants have moved to dismiss the complaint. (Doc. # 11.) The parties have completed briefing on the motion, which is now ripe for disposition.

## II. Discussion

### A. Standards Involved

Defendants move for dismissal under Federal Rule of Civil Procedure 12(b)(1), which provides that an action may be dismissed for lack of subject matter jurisdiction. Under the Federal Rules of Civil Procedure, "[p]laintiffs have the burden of proving jurisdiction in order to survive a Rule 12(b)(1) motion . . . ." *Weaver v. Univ. of Cincinnati*, 758 F. Supp. 446, 448 (S.D. Ohio 1991) (citing *Moir v. Greater Cleveland Reg'l. Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990)). *See also Rapier v. Union City Non-Ferrous, Inc.*, 197 F. Supp. 2d 1008, 1012 (S.D. Ohio 2002) (citing *McNutt v. General Motors Acceptance Corporation of Indiana, Inc.*, 298 U.S. 178, 189 (1936); *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986)) ("The plaintiff bears the burden of establishing, by a preponderance of the evidence, the existence of federal subject matter jurisdiction"). Moreover, this Court may resolve any factual disputes when adjudicating a defendant's jurisdictional challenge. *See Moir*, 895 F.2d at 269.

Defendants also move for dismissal under Federal Rule of Civil Procedure 12(b)(6), which requires an assessment of whether Plaintiff has set forth claims upon which this Court may grant relief. Under the United States Supreme Court's recent articulation of the analytic

standard involved in applying this rule, this Court must construe the amended complaint in favor of Plaintiff, accept the factual allegations contained in the amended complaint as true, and determine whether Plaintiff's factual allegations present plausible claims. *See Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007); *Luckey v. Butler County*, No. 1:06cv123, 2007 WL 4561782, at *1 (S.D. Ohio Dec. 21, 2007) (characterizing *Bell Atlantic* as requiring that a complaint " 'state a claim to relief that is plausible on its face' " (quoting *In re OSB Antitrust Litigation*, No. 06-826, 2007 WL 2253419, at *2 (E.D. Pa. Aug. 3, 2007))). To be considered plausible, a claim must be more than merely conceivable. *Bell Atlantic Corp.*, 127 S. Ct. at 1974; *Assoc. of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007); *Tucker v. Middleburg-Legacy Place, LLC*, No. 1:07CV2015, 2007 WL 3287359, at *2 (N.D. Ohio Nov. 5, 2007). Thus, "[d]ismissal is warranted if the complaint lacks an allegation as to a necessary element of the claim raised." *Id.* (citing *Craighead v. E.F. Hutton & Co., Inc.*, 899 F.2d 485 (6th Cir. 1990)).

### B. Analysis

As noted, Plaintiff asserts several federal claims under 42 U.S.C. § 1983. Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Thus, in order to assert a valid § 1983 claim, Plaintiff must show that, while acting under color of state law, Defendants deprived him of a right secured by the Federal Constitution or laws of the United States. *See Alkire v. Irving,* 330 F.3d 802, 813 (6th Cir.

4

2003).

Plaintiff also asserts a federal claim under 15 U.S.C. § 1 for restraint of trade. The Supreme Court has explained that liability under this provision of the Sherman Antitrust Act "requires a 'contract, combination ..., or conspiracy, in restraint of trade or commerce.' " *Bell Atlantic Corp.*, 127 S. Ct. at 1961.

Defendants first argue that the Eleventh Amendment bars Plaintiff's federal claims against the State of Ohio, the Board, and the BWC. A suit against a state agency is a suit against the state subject to the Eleventh Amendment prohibition. *Begun v. Ohio State Med. Bd.*, 872 F.2d 1023, 1989 WL 34047, at *1 (6th Cir. 1989) (unpublished table decision) ("A state or its agencies may not be sued without its consent."). This Court agrees that the Eleventh Amendment provides immunity from Plaintiff's federal claims, which seek only monetary damages. *See Harmon v. Hamilton County Court of Common Pleas*, 83 F. App'x 766, 768 (6th Cir. 2003); *Gallagher v. Lane*, 75 F. App'x 440, 441 (6th Cir. 2003).

This same bar exists as to the individual defendants named in their official capacities because "a suit for monetary damages against an individual in his or her official capacity is deemed to be an action against the state whose officers are nominal defendants. Such a suit . . . is barred by the Eleventh Amendment unless the state expressly consents to being sued and therefore waives its sovereign immunity." *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 545 (6th Cir. 2004) (citing *Doe v. Wigginton*, 21 F.3d 733, 736-37 (6th Cir. 1994)). *See also Adams v. Morris*, 90 F. App'x 856, 857 (6th Cir. 2004); *Gallagher*, 75 F. App'x at 441; *Roeder v. Ohio Dep't of Rehab. & Correction*, No. 2:04-cv-292, 2006 WL 840385, at *4 (S.D. Ohio Mar. 30, 2006). In reaching this conclusion, it is important to note that Plaintiff seeks only monetary

damages.  Generally, official-capacity defendants are not "persons" within the meaning of § 1983, but state officials sued in their official capacities *are* "persons" under § 1983 when prospective injunctive relief is sought, which is not a form of relief that Plaintiff seeks here.  *See Cox v. Shelby State Cmty. Coll.*, 48 F. App'x 500, 504 (6th Cir. 2002) ("the Eleventh Amendment permits prospective injunctive relief, but not damage awards, for suits against individuals in their official capacities under 42 U.S.C. § 1983" (quoting *McKay v. Thompson*, 226 F.3d 752, 757 (6th Cir. 2000))).  *See also Doe v. Wigginton*, 21 F.3d 733, 738 (6th Cir. 1994) ("Each of the individual defendants is a 'person' under § 1983 for purposes of Doe's official-capacity claims for injunctive and declaratory relief" (citing *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71 n.10 (1989))).

Given the foregoing, the Court must dismiss Plaintiff's § 1983 claims against the State of Ohio, the Board, the BWC, and the individual defendants in their official capacities.  This leaves Plaintiff's federal restraint of trade claims against these defendants.  The crux of Plaintiff's antitrust claims is that the requirement that chiropractors obtain prior authorization for care to be provided to patients seeking workers' compensation benefits while not requiring other healthcare providers to seek such prior authorization produces adverse, anticompetitive effects within the workers' compensation system.  The Court must also dismiss these claims on Eleventh Amendment grounds.  *See McGuire v. Ameritech Services, Inc.*, 253 F. Supp. 2d 988, 997 (S.D. Ohio 2003) (dismissing 15 U.S.C. § 1 claim on grounds of Eleventh Amendment immunity).

The Court notes that Defendants alternatively argue that this Court must abstain from exercising jurisdiction over many of Plaintiff's claims.  The Sixth Circuit Court of Appeals has explained that "[u]nder the *Rooker-Feldman* doctrine, a federal district court lacks subject matter

jurisdiction to review final adjudications of a state's highest court or to evaluate constitutional claims that are 'inextricably intertwined' with a state court's decision rendered in a judicial proceeding." *Olivares v. Performance Contracting Group*, 76 F. App'x 603, 604-05 (6th Cir. 2003) (citing *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 483 n.16 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923)). The Court need not address the application of the doctrine here or Defendants' other arguments given the dispositive nature of Defendant's Eleventh Amendment argument, although the Court notes at first blush that Defendants present a compelling argument for the probable application of the *Rooker-Feldman* doctrine applicable here in regard to Plaintiff's federal constitutional claims.

This leaves as the only remaining federal component of this action Plaintiff's federal claims against the individual defendants who are named in their individual capacities. These individuals assert that dismissal of the remaining claims is warranted based on grounds of qualified immunity. The Court agrees.

The qualified immunity doctrine, under certain circumstances, operates to shield from civil liability governmental officials who are performing official duties. *Sinick v. County of Summit*, 76 F. App'x 675, 678-79 (6th Cir. 2003). This affirmative defense is meant to safeguard an official's proper decision making process and offers that party potential relief from frivolous suits. *See D'Agastino v. City of Warren*, 75 F. App'x 990, 993 (6th Cir. 2003). The Sixth Circuit has explained that qualified immunity "shields government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Id*. (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In addition to shielding officials from liability, qualified

immunity may entitle the official to not stand trial or face the other burdens of litigation.  *Saucier v. Katz*, 533 U.S. 194, 200 (2001) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).  This principal directs courts to make a ruling on the issue of qualified immunity early in the proceedings, so that the costs and expenses of trial are avoided where the defense is dispositive. *Id.*

The Supreme Court has instructed lower courts to use a distinct analysis to determine whether the application of qualified immunity is warranted.  In addressing the potential applicability of qualified immunity, a court follows a sequential inquiry: "First, the court considers whether, on the plaintiff's facts, there has there been a violation.  Second, the court considers whether that violation involved 'clearly established constitutional rights of which a reasonable person would have known.' "  *Hoover v. Radabaugh*, 307 F.3d 460, 465 (6th Cir. 2002) (quoting *Dickerson v. McClellan*, 101 F.3d 1151, 1158 (6th Cir. 1996)).  *See also Saucier*, 533 U.S. at 201; *Davenport v. Causey*, 521 F.3d 544, 550 (6th Cir. 2008).  This analytic approach has also been characterized as a three-part inquiry in which a court must ask:

> 1) has a constitutional violation occurred; 2) was that right a clearly established right of which a reasonable person would have known; and 3) has the plaintiff alleged sufficient evidence "to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights"?

*Id*. at 679 (quoting *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (en banc)).  *See also Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991) ("A public official is entitled to qualified immunity for conduct in performing discretionary functions so long as that conduct does not violate clearly established statutory or constitutional rights of which a reasonable officer would have known").

The doctrine of qualified immunity thus recognizes that an official can be found to have

violated the constitution, but be granted immunity for *reasonable* mistakes as to the legality of his or her action. *Saucier*, 533 U.S. at 206. The reasonableness of such mistakes is inherently dependant upon the clarity of the legal constraints governing particular conduct. The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. *Id*. at 202 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

In determining whether a defendant is entitled to qualified immunity, "[t]he ultimate burden of proof is on [the plaintiff] to show that [the defendants] are not entitled to qualified immunity." *Wegener*, 933 F.2d at 392. *See also Russo v. City of Cincinnati*, 953 F.2d 1036, 1043 (6th Cir. 1992). Further, "[w]hen ruling on qualified immunity, the district court should indicate the clearly established right at issue and the factual basis for its conclusion that a genuine issue exists as to the commission of acts violating that right." *Wegener*, 933 F.2d at 392 (citing *Poe v. Haydon*, 853 F.2d 418, 423-24, 426 (6th Cir. 1988)).

Cognizant of the foregoing analytic approach, Defendants argue that Plaintiff's pleading fails to present actionable violations that defeat qualified immunity. Even assuming that Plaintiff's factual contentions are true, Defendants then assert that no reasonable person, including the individual defendants, could have known that this conduct constituted a violation of Plaintiff's federal rights. For example, Defendants posit that no reasonable person could conclude that attempting to get Plaintiff to take steps to have a public disciplinary hearing was a procedural due process violation. They also argue that no reasonable person could conclude that requiring prior authorization and specific treatment codes constitutes an equal protection violation.

The Court agrees that Plaintiff's own account of the facts defeats his due process claim.

Under *his* version of the facts, Plaintiff's *own* actions prevented him from presenting evidence, and his allegations fail to link the lack of a private as opposed to public hearing with due process.

Additionally, the Court cannot grant relief on Plaintiff's vague and generalized claims involving equal protection. Because these claims do not allege discrimination based on a suspect classification or involving a fundamental right, the rational basis test and not strict scrutiny applies. Given the inherently different types of treatment offered by chiropractors as opposed to other providers, there can be a rational basis for treating a chiropractor differently than other health care providers. *See Giacalone v. Wehner*, 387 F. Supp. 2d 383 (S.D.N.Y. 2005) (granting Rule 12(b)(6) motion on equal protection claim based on different treatment of chiropractors and physical therapists). It is beyond question that a state such as Ohio has a legitimate state interest in controlling the costs and services involved in the workers' compensation system, which regulation of prior authorization would invariably affect. *Cf. Gyadu v. Workers' Compensation Comm'n*, 930 F. Supp. 738, 750 (D. Conn. 1996) ("The constitutional violation alleged by Plaintiff relates to actions taken by Defendants in accordance with the State workers' compensation system and the statutes that regulate the payment of benefits. . . . [W]e find this statutory scheme withstands an equal protection challenge on the ground that it is rationally related to the State's legitimate interest in regulating the costs of workers' compensation. Thus, we find that there is no set of facts that Plaintiff will be able to prove at trial that will support these vague, generalized allegations of an equal protection violation, so as to state a cause of action under section 1983."). Just as a state can cap weekly benefits available under a workers' compensation system, so too can it regulate costs by requiring pre-authorization for chiropractic

procedures. *Cf. id.* at 751.

Finally, dismissal of Plaintiff's claim under 15 U.S.C. § 1 against the individual defendants in their individual capacities is warranted because his conclusory allegations of a conspiracy to restrain trade are insufficient to state a cause of action. *See Carras v. Hull & Smith Horse Vans, Inc.*, 803 F.2d 718, 1986 WL 17709, at *2 (6th Cir. 1986) (unpublished table decision). State action immunity applies. *See Parker v. Brown*, 317 U.S. 341 (1943).

The Court therefore concludes that none of Plaintiff's federal claims survive the motion to dismiss. Having so dismissed Plaintiff's federal claims, this Court presumptively should not address any state law claim. *See Jackson v. Heh*, 215 F.3d 1326, 2000 WL 761807, at *8 (6th Cir. 2000) (unpublished table decision) (referencing 28 U.S.C. § 1367 and stating that "[w]here, as here, a federal court has properly dismissed a plaintiff's federal claims, there is a 'strong presumption' in favor of dismissing any remaining state claims unless the plaintiff can establish an alternate basis for federal jurisdiction." (citing *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1255 (6th Cir. 1998))). Plaintiff has failed to suggest any justification or alternative basis for exercising jurisdiction over his remaining state law claims should the Court dismiss his federal claims. Cognizant of judicial economy, the Court in its discretion therefore declines to exercise federal jurisdiction and dismisses without prejudice Plaintiff's state law claims for libel, fraud, breach of contract, breach of confidentiality, and intentional infliction of emotional distress. *See Mathis v. Franklin County Children Services*, No. 2:08-cv-84, 2008 WL 1775422, at *6 (S.D. Ohio Apr. 16, 2008) (declining to exercise jurisdiction over state law claims following dismissal of § 1983 claims); *Elkins v. Summit County, Ohio*, No. 5:06-cv-3004, 2008 WL 614805, at *8 (N.D. Ohio Mar. 5, 2008) (same).

### III.  Conclusion

The Court **GRANTS** Defendants' motion to dismiss (Doc. # 11) in regard to Plaintiff's federal claims and **DISMISSES WITHOUT PREJUDICE** Plaintiff's state law claims.  The Clerk shall enter judgment accordingly and terminate this case upon the docket records of the United States District Court for the Southern District of Ohio, Eastern Division, at Columbus.

**IT IS SO ORDERED**.

    /s/ Gregory L. Frost  
GREGORY L. FROST  
UNITED STATES DISTRICT JUDGE